**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                        Case No. 4:08CR00251 JLH

DONALD RAY FORTE                                                                         DEFENDANT

**OPINION AND ORDER**

Donald Ray Forte has moved to suppress the evidence obtained as a result of the search of his vehicle. The Court has held a suppression hearing on the matter, and both parties have submitted post-hearing briefs. For the following reasons, Forte's motion to suppress is denied.

**I.**

The issues before the Court arise from a search of a vehicle driven by Donald Ray Forte by Officer Gregory Shapiro of the Pine Bluff Police Department during which Shapiro found a firearm. Forte was a felon. Forte has now been indicted in this action for violating 18 U.S.C. § 922(g), which makes it unlawful for a felon to possess a firearm that has been transported in interstate commerce. Forte moves to suppress the evidence discovered during the search of the minivan.

In his motion to suppress, Forte argues that the evidence found in the vehicle should be suppressed pursuant to the United States Supreme Court's recent decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), in which the Supreme Court held that police may search a vehicle incident to an arrest "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 129 S. Ct. at 1719. However, the parties have now agreed that Shapiro's search of the vehicle was not a search incident to an arrest, but an inventory

search in preparation for impounding the vehicle. Thus, the issue before the Court is whether Shapiro's search of the vehicle constitutes a lawful inventory search in preparation for impound.

## II.

Police may conduct an inventory search without a warrant or probable cause where the impounding is lawful. *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005). The purpose of an inventory search is for the protection of (1) the owner's property while in police custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *Kennedy*, 427 F.3d at 1143 (citing *United States v. Rankin*, 261 F.3d 735, 740 (8th Cir. 2001)). Where police conduct an inventory search according to standardized criteria or an established routine, concerns of motive or excessive discretion are vitiated, and the search is reasonable. *Id.* (quoting *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993)).

In addition to following standardized criteria or established routine, an officer may use some discretion in conducting an inventory search, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *United States v. Hall*, 497 F.3d 846, 851 (8th Cir. 2007) (quoting *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987)). "So long as the officer's residual judgment is exercised based on legitimate concerns related to the purposes of an impoundment, his decision to impound a particular vehicle does not run afoul of the Constitution." *Id.* (quoting *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004)). "As with an inventory search, an impoundment policy

may allow some 'latitude' and 'exercise of judgment' by a police officer when those decisions are based on concerns related to the purposes of an impoundment." *Petty*, 367 F.3d at 1012 (citing *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990)).

**III.**

Shortly before two o'clock in the morning, while he was on patrol, Shapiro observed a Ford Aerostar minivan parked on a city street. Shapiro had received, or thought he had received, a report associating a similar vehicle with a recent homicide in the area, so he reported the license plate number to the dispatcher who checked the license plate number in the State database and found that the license plate on the minivan was assigned to a different vehicle. Shapiro then observed Forte drive the minivan into a driveway. Shapiro initiated his blue lights and pulled in behind the minivan. Forte and two passengers exited the minivan and began walking toward the house. Shapiro ordered them to come back to the minivan. Forte smelled of intoxicating beverages, and he staggered around. When Shapiro asked for his driver's license, Forte replied that he did not have one. Shapiro ran a check based on the verbal identification provided and discovered that Forte's driver's license had been suspended and that he was on felony probation. Because Forte's driver's license was suspended, he was impaired, and the minivan was improperly registered, Shapiro began the inventory search for impound. He found a semiautomatic handgun in a map compartment on the driver's side door.

The Pine Bluff Police Department policies and procedures on the towing and storage of vehicles were enacted pursuant to Pine Bluff City Ordinance 26-31, which outlines the department's

authority to impound.[1]  Shapiro testified that he relied on paragraph I.B.2 of the department's policies, which states: "When the driver of the vehicle has no DL, suspended DL or the registration appears to be improper. [sic]"  Paragraph I.B.2 is not listed in the sequence of paragraphs referring back to ordinance 26-31; it is a separate paragraph under the section titled "Impound Authority."  Standing alone, as it does in the 2007 version of the impound policies, paragraph I.B.2 is an incomplete sentence.  Paragraph I.B.1.f allows for impounding when the driver is taken into custody and is unable to make a legitimate disposition of the vehicle, for example, because he was driving while under the influence.

Bob Rawlinson with the Pine Bluff Police Department testified that the department's policies and procedures were reviewed by the city attorney's office and adopted by the city council.  He also testified that paragraph I.B.2 from the 2007 policies gave authority to impound a vehicle where there was no driver's license, a suspended driver's license, or improper registration.

Forte introduced into evidence the 2008 version of those policies.  The 2008 version lists 2007's paragraph I.B.2 in the sequence of paragraphs referring back to ordinance 26-31, and in doing so renders it a part of a complete sentence.  The 2008 version also explicitly provides for impounding a vehicle from private property.  Although the 2007 policies did not address impounding from private property, Forte argued at the hearing that the policies in effect in 2007 must not have allowed for such impounding since the 2008 updated version included impounding from private property.  That the department updated its policies in 2008 to include an express statement authorizing impounding from private property, however, does not mean that such impounding was forbidden

---

[1] Ordinance 26-31 does not contain language regarding suspended drivers' licenses or improper registrations.

before. Forte also noted that section C of the 2007 policies says that vehicles should be impounded only as a last resort and that it lists situations in which impounding would be prohibited. Forte argues that impounding based solely on an arrestee's status as a driver is irrational and inconsistent with the "community care taking" standard set forth in *Opperman*. Forte also argues that impounding is valid only where the driver is unable to remove the vehicle from public thoroughfares or parking lots expeditiously. Because his minivan was parked in a private driveway, Forte concludes that the decision to impound was unreasonable.

The testimony of both Shapiro and Rawlinson supports the government's argument that Shapiro's inventory search was conducted according to Pine Bluff Police Department policy. "An officer's testimony that the inventory search was performed within the police department's policy is sufficient." *United States v. Engler*, 521 F.3d 965, 972 (8th Cir. 2008) (citing *United States v. Betterton*, 417 F.3d 826, 830 (8th Cir. 2005)). "[T]he absence of a written policy controlling the decision to impound a vehicle does not automatically render an inventory search unconstitutional. While a written policy may be preferable, testimony can be sufficient to establish police impoundment procedures." *Betterton*, 417 F.3d 826, 830 (8th Cir. 2005).

Shapiro testified, and Rawlinson confirmed, that, although the 2007 written policies did not explicitly provide for impounding a vehicle on private property, department policy allowed officers to impound vehicles on private property where the circumstances supported impounding. Rawlinson testified that the department policies were meant to be used along with common sense and the officer's discretion. The evidence at the suppression hearing showed that (1) Shapiro learned of the improper registration while the minivan was still on the street; (2) Shapiro observed Forte drive the minivan into the driveway; (3) Shapiro observed Forte to be staggering and under the influence of

alcoholic beverages; and (4) Shapiro discovered that Forte's license had been suspended. That Shapiro discovered Forte to be under the influence and driving with a suspended license only after he was parked in a driveway does not mean those factors could not be considered in determining whether to impound under department policy. Therefore, under paragraphs I.B.1.f or I.B.2 of the 2007 policies, Shapiro acted reasonably when he decided to conduct an inventory search in preparation for impounding the minivan.

## CONCLUSION

Based on the evidence adduced at the suppression hearing and the totality of the circumstances, the Court finds that Shapiro acted pursuant to Pine Bluff Police Department policy and that his inventory search was reasonable. *See Kennedy*, 427 F.3d at 1143. Because Shapiro's inventory search was reasonable, Forte's motion to suppress is DENIED. Docket #26.

IT IS SO ORDERED this 18th day of September, 2009.

_J. Leon Holmes_
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE